IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

REX. E. BOWMAN                                                             PLAINTIFF

vs.                              CIVIL NO. 04-5242

JO ANNE B. BARNHART,
COMMISSIONER, SOCIAL SECURITY ADMINISTRATION            DEFENDANT

## MEMORANDUM OPINION

Rex Bowman (hereinafter "plaintiff"), brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration denying his application for supplemental security income benefits ("SSI"), under Title XVI of the Act.

## Background:

The application for SSI now before this court was filed on August 27, 2002, alleging an onset date of August 1, 2002, due to back injuries. (Tr. 56-58, 60). An administrative hearing was held on September 24, 2003. (Tr. 190-213). Plaintiff was present and represented by counsel.

At the time of the administrative hearing on September 24, 2003, plaintiff was forty-six years old and possessed a seventh grade education. (Tr. 195-196). The record reveals that he had past relevant work ("PRW") as a bricklayer. (Tr. 196).

On March 24, 2004, the Administrative Law Judge ("ALJ"), found that plaintiff had severe impairments, but that those impairments did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Tr. 22-23). After discrediting plaintiff's subjective allegations, the ALJ concluded that he maintained the residual functional capacity

("RFC"), to perform light work. (Tr. 23). Utilizing the Medical-Vocational Guidelines ("Grids"), he then determined that plaintiff could perform work that exists in significant numbers in the national economy. (Tr. 23).

On May 18, 2004, the Appeals Council declined to review this decision. (Tr. 8-10). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. The plaintiff and Commissioner have filed appeal briefs, and the case is now ready for decision. (Doc. # 7, 9).

**Applicable Law:**

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

2

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevent him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**Discussion:**

Of particular concern to the undersigned is the ALJ's RFC determination. RFC is the most

3

a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003). "Under this step, the ALJ is required to set forth specifically a claimant's limitations and to determine how those limitations affect her RFC." *Id*.

In the present case, the ALJ determined that plaintiff could perform a full range of light work. However, in so doing, he failed to properly consider the medical evidence concerning plaintiff's back condition and Hepatitis C. In fact, he made no mention of plaintiff's Hepatitis C diagnosis. Our review of the medical evidence reveals the following.

On June 5, 2002, plaintiff complained of pain radiating from his lower back to his neck. (Tr. 95). Records indicate that he was experiencing sharp pain that had worsened. Plaintiff reported that he had originally injured his back in the 1970's. However, the previous Friday, while working as a bricklayer, he repeatedly lifted a cement block above his head, resulting in back pain. He stated that

he had been seeing a chiropractor, but had obtained no relief. Plaintiff also indicated that he had been taking his wife's Ultram. On examination, Dr. Robert Wilson noted tenderness, even to light touch, throughout the thoracic and lumbar areas. However, plaintiff had a normal range of motion, a normal sensory and motor exam, negative straight-leg raise test, and no weakness. (Tr. 95). As such, Dr. Wilson diagnosed him with thoracic and lumbar sprain. He prescribed Naprosyn and Flexeril, and limited plaintiff to lifting no more than ten pounds with no repetitive bending, twisting, or overhead work. (Tr. 96).

On September 9, 2002, plaintiff reported that his back pain had not improved. (Tr. 92). He also stated that he did not have a complete range of motion in his back, and that sitting and standing for extended periods of time increased his pain. Records indicate that plaintiff was taking Naprosyn and Flexeril. Dr. William Kendrick advised plaintiff to rest the involved muscles for two to seven days, until the pain resolved. He also recommended that he apply heat (or cold) and massage to help relieve his discomfort. Then, Dr. Kendrick prescribed Flexeril and Lorcet Plus Tabs, and gave plaintiff an injection of Depo Medrol. (Tr. 92).

On December 30, 2002, plaintiff underwent a general physical examination. (Tr. 97-103). Plaintiff complained of back pain radiating down his left leg, mild numbness, an inability to sit more than fifteen minutes, and an inability to stand more than five minutes. (Tr. 97). He rated his pain as an eight on a ten scale. On examination, plaintiff had a decreased range of motion in his lumbar spine and shoulders, with a normal range of motion in all other areas. (Tr. 100). The doctor also noted that x-rays of his lumbar spine revealed a decreased lordotic curve and mild sclerosis. (Tr.

102). Therefore, he diagnosed plaintiff with mild osteoarthritis, back pain strain, chronic bronchitis, and hypertension. (Tr. 103). The doctor indicated that plaintiff could walk, handle, finger, see, hear and speak. However, he stated that plaintiff would have the following limitations: moderate limitations regarding his ability to stand, mild limitations with regard to sitting, and moderate to severe limitations affecting his ability to lift and carry.

On January 28, 2003, plaintiff presented to the emergency room ("ER"), with lower back pain, indicating that he had injured his back in June 2002. (Tr. 120). Further, he stated that he had reinjured his back that day. (Tr. 121). Plaintiff also reported that he was out of his pain medication. (Tr. 121). Following an examination, plaintiff was diagnosed with back pain, given an injection of Toradol, and prescriptions for Vicodin and Flexeril. (Tr. 120). The doctor also directed him to apply moist heat to the affected area. (Tr. 120, 123).

On January 29, 2003, plaintiff was treated in the ER for complaints of continued back pain. (Tr. 115). He stated that he had not had filled his prescriptions from the previous night, and now wanted a shot. On examination, sacroiliac joint and lower paraspinal tenderness was noted. After diagnosing him with lower back pain, the doctor gave plaintiff Demerol and Phenergan injections, and told him to rest and apply ice three times per day. (Tr. 115, 118). He was also advised not to lift over five pounds or perform repetitive movements for three days. (Tr. 118).

On August 30, 2003, plaintiff presented at the ER with complains of chronic lower back and neck pain. (Tr. 111). He requested an injection of Demerol. (Tr. 111-112). Plaintiff was noted to have difficulty ambulating. (Tr. 112). He was released with prescriptions for Ultram and Flexeril.

(Tr. 111).

On September 28, 2003, plaintiff presented at the ER with complaints of chronic lower back pain. (Tr. 148). An examination revealed that his spine was not tender. Records indicate that plaintiff was moving around the room "easily." After receiving prescriptions for Ultram and Flexeril, plaintiff was discharged. (Tr. 148).

On October 1, 2003, plaintiff sought treatment from Dr. William Burt for chronic back pain. (Tr. 135). Records indicate that he had not seen Dr. Burt in over a year. Plaintiff reported pain from his neck to his right hip, a headache, and irritability. An examination revealed an elevated blood pressure. Further, x-rays of his cervical and lumbar spine revealed straightening of the lordotic curvature and mild degenerative changes. (Tr. 136). Dr. Burt diagnosed him with hypertension, cervical myositis, lumbar pain, and anxiety. He then prescribed Hydrochlorothiazide and ordered laboratory tests. (Tr. 136).

Records dated October 3, 2003, indicate that plaintiff's laboratory results were normal, with the exception of his liver function levels. (Tr. 133). Dr. Burt indicated that there had not been enough blood drawn to run a Hepatitis panel. As such, he stated that he would order additional blood work. Further, he gave plaintiff refills of Naprosyn and Flexeril, to treat his thoracic and lumbar strain. (Tr. 133).

Progress notes dated October 22, 2003, reveal that plaintiff was having continued extreme lower back pain. (Tr. 132). He had been taking Hydrochlorothiazide regularly, and his blood pressure was "good." Lab results revealed elevated liver function levels, but were otherwise normal.

7

Although he had no history of Hepatitis, he did admit to drinking one six pack of beer per week. Due to his laboratory results, Dr. Burt ordered additional blood work to retest his liver function levels and to run a Hepatitis panel. (Tr. 132).

On October 29, 2003, plaintiff was treated for general malaise, weight loss, and nervous episodes. (Tr. 129). Records indicate that his Hepatitis C antibody was positive, and his liver function levels remained elevated. Dr. Burt listed his active impairments as thoracic and lumbar strain, Hepatitis C, and chronic pain syndrome. He then prescribed Nortriptyline and referred plaintiff to a gastroenterologist to see if he was a candidate for Interferon therapy. (Tr. 130).

On November 13, 2003, plaintiff was evaluated by Dr. Alice Martinson, an orthopaedist. (Tr. 150). He complained of ongoing severe and constant lower back pain without radiation into his lower extremities. Plaintiff stated that his pain sometimes radiated up his back, toward his armpits. He indicated that his pain was made worse by bending, twisting, lifting objects weighing more than fifteen to twenty pounds, and sitting for longer than fifteen minutes. His current medications were noted to be Hydrochlorothiazide, Tramadol, Nortriptyline, and Flexeril. On examination, Dr. Martinson indicated that plaintiff stood with a straight spine, could demonstrate full forward flexion bringing his fingertips to the floor, had ten degrees of extension with palpable spasm, fifteen degrees each of lateral bend and rotation without spasm, a negative sealed root test, and straight-leg raising limited to fifty degrees bilaterally by hamstring tightness. (Tr. 151). He also had a full range of motion in his cervical spine in all directions, but complained of discomfort at the range extremes. X-rays of his lumbar spine showed loss of disc height at the L5-S1 with some traction-type spurs on

the margins of the vertebral bodies at the L4-5 and L3-4. As such, Dr. Martinson concluded that plaintiff was suffering from degenerative disc disease in the lumbar spine without evidence of radiculopathy. Utilizing the AMA guidelines, she determined that plaintiff had a total body impairment of five percent, based on the physical abnormalities in his lumbar spine. (Tr. 151).

Dr. Martinson completed a medical assessment of ability to perform work-related activities. (Tr. 153). She indicated that plaintiff could frequently lift up to ten pounds, occasionally lift eleven to twenty pounds, and never lift more than twenty pounds. Dr. Martinson reported that plaintiff could sit for eight hours per day and stand and/or walk for four hours per day. As for postural activities, she found that plaintiff could never stoop or crouch. (Tr. 153).

On December 10, 2003, plaintiff was referred to Dr. Terryl Ortego for further evaluation of his Hepatitis C. (Tr. 176). He reported a history of fever, chills, sweats, a weight loss of six pounds, headaches, chest pain, and heartburn. Dr. Ortego noted that his medical history was positive for hypertension and chronic pain syndrome. Further, plaintiff admitted previously drinking a six-pack of beer per week, stating that his father was an alcoholic. After a physical examination was unremarkable, Dr. Ortego diagnosed him with elevated liver enzymes and a positive antibody test for Hepatitis C. He then ordered a quantitative assay for Hepatitis C virus. (Tr. 176).

On January 9, 2004, after a positive quantitative assay for Hepatitis C, plaintiff underwent a liver biopsy. (Tr. 167). The pathology report revealed evidence of chronic Hepatitis, mildly active, with a minimal increase in periportal fibrosis. (Tr. 164). No evidence of granulomatous inflammation or malignancy was noted. (Tr. 164).

9

On January 16, 2004, plaintiff presented at the ER with complaints of back pain. (Tr. 157). An examination revealed right lower paraspinal and sacroiliac joint tenderness. Results of an MRI performed three days earlier showed degenerative joint disease at the L5-S1 level with loss of disc space height, anterior osteophytes, and broad-based mild disc protrusion that narrowed the neuroforamina. (Tr. 162). For this, plaintiff was given Tylox and Flexeril. (Tr. 157). He was restricted to lifting nothing over five pounds or performing repetitive movements for at least three days. (Tr. 159).

In light of this evidence, we believe that remand is necessary to allow the ALJ to reconsider the evidence concerning plaintiff's back impairment. Specifically, he should reevaluate the evidence indicating that plaintiff does have postural limitations, such as an inability to stoop, crouch, bend, crawl, or climb, that would prevent him from performing a "full range" of light work. (Tr. 153). In addition, as the ALJ failed to consider the evidence concerning plaintiff's Hepatitis C diagnosis, on remand, he should fully consider whether the combined effect of appellant's separate impairments considered together constitute a severe impairment. 42 U.S.C.A. § 423 (requiring the Secretary to consider the combined effect of all of an individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity to entitle that person to benefits), *Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000) (holding that the ALJ is not free to ignore medical evidence, rather must consider the whole record); *Anderson v. Heckler*, 805 F.2d 801, 805 (8th Cir. 1986) (holding that ALJ is required to consider the combined effect of plaintiff's impairments).

After reviewing the entire record, it also appears that none of plaintiff's treating physicians

10

have completed an RFC assessment for the time period in question. *See Vaughn v. Heckler*, 741 F.2d 177, 179 (8th Cir. 1984.) (If a treating physician has not issued an opinion which can be adequately related to the disability standard, the ALJ is obligated to address a precise inquiry to the physician so as to clarify the record). The ALJ, in concluding that plaintiff could perform the exertional and non-exertional requirements of a full range of light work, relied on RFC assessments completed by examining medical consultants, who examined plaintiff on only one occasion. (Tr. 97-103, 150-153.) We note, that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999). Therefore, based on the current evidence of record, we do not find substantial evidence supporting the ALJ's RFC determination.

On remand, the ALJ is directed to address interrogatories to the physicians who have evaluated and/or treated plaintiff, asking the physicians to review plaintiff's medical records; to complete a mental and physical RFC assessment regarding plaintiff's capabilities during the time period in question; and, to give the objective basis for their opinions, so that an informed decision can be made regarding plaintiff's ability to perform basic work activities on a sustained basis during the relevant time period in question. *Chitwood v. Bowen*, 788 F.2d 1376, 1378 n.1 (8th Cir. 1986); *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985).

The ALJ also failed to consider evidence indicating that plaintiff failed to seek more treatment and fill prescription medications, due to financial hardship. (Tr. 202-204, 207). While it is for the ALJ in the first instance to determine a plaintiff's motivation for failing to follow a

11

prescribed course of treatment, or to seek medical attention, such failure may be excused by a claimant's lack of funds. *Tome v. Schweiker*, 724 F.2d 711, 714 (8th Cir. 1984); *Jackson v. Bowen*, 866 F. 2d 274, 275 (8th Cir. 1989). "Although it is permissible in assessing the severity of pain for an ALJ to consider a claimant's medical treatment and medications, the ALJ must consider a claimant's allegation that he has not sought medical treatment or used medications because of a lack of finances." *Dover v. Bowen*, 784 F.2d 335, 337 (8th Cir. 1986) (citing *Tome v. Schweiker*, 724 F.2d at 714). Economic justifications for lack of treatment can be relevant to a disability determination. *Murphy v. Sullivan*, 953 F.2d 383, 386 (8th Cir. 1992). Therefore, on remand, the ALJ is directed to further develop the record concerning plaintiff's financial ability to obtain treatment and medication.

**Conclusion:**

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the plaintiff, should be reversed and this matter should be remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 15th day of September 2005.

/s/ Bobby E. Shepherd
HONORABLE BOBBY E. SHEPHERD
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)